IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

JOEANN WHARTON
JOHN WHARTON

Criminal No. ELH-13-0043

**MEMORANDUM OPINION**

In an eight-count Superseding Indictment filed on June 27, 2013 (ECF 19), defendants

Joeann and John Wharton are charged with several criminal acts relating to their receipt of

various types of Social Security benefits during an extended period. The Whartons were married

in 1970, when Ms. Wharton was 16 and Mr. Wharton was 29. The status of their marriage

during the relevant time period is contested.

Count One charges conspiracy to defraud the government with respect to Social Security

benefits programs, in violation of 18 U.S.C. § 371. In particular, Count One alleges that, since

about 1996, the defendants conspired to embezzle, steal, and convert money of the government,

whose value exceeded $1,000, in violation of 18 U.S.C. § 641, and that they conspired to use,

without lawful authority, the identification of another, during and in relation to theft of

government property, in violation of 18 U.S.C. § 1028A(a)(1), (a)(4), and (a)(5). *See* ECF 19,

¶ 11.

Count Two charges the submission of a false statement on December 13, 2012, in

violation of 42 U.S.C. § 1383a(a)(2).[1] Count Three, lodged against Ms. Wharton only, charges Social Security fraud under 42 U.S.C. § 1383a(a)(3), in connection with Social Security benefits paid to Ms. Wharton from October 1996 until December 2012. Counts Four through Seven charge theft of government funds, in violation of 18 U.S.C. § 641. Count Eight, against Ms. Wharton only, alleges aggravated identity theft under 18 U.S.C. § 1028(A).[2] All of the substantive counts incorporate paragraphs 1 through 10 and 12 through 23 of Count One.

The charges involve several factual groupings. One group concerns Ms. Wharton's disability claim, filed in 1996 in connection with the Social Security benefits program known as Supplemental Security Income for the Aged, Blind, and Disabled, pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 301 *et seq*. ("SSI Program"). According to the government, Ms. Wharton received SSI Program benefits from 1996 to 2012, based on a diagnosis of "mental retardation"[3] and a corresponding representation of financial need. In particular, the government alleges that, when Ms. Wharton applied for SSI Program disability benefits in October 1996, she did so under false pretenses, in that she falsely represented that she was living separate and apart from her husband when, according to the government, they were living together. *See* ECF 19, ¶ 12. Had that fact been known, Ms. Wharton would not have qualified for SSI Program

---

[1] Count Two is not in issue here.

[2] With the exception of Counts Three and Eight, the Whartons are charged both substantively and as aiders and abettors, 18 U.S.C. § 2. The Superseding Indictment also seeks forfeiture.

[3] The Court recognizes that the terminology of "mental retardation" is disfavored, and that the terms "cognitive impairment" and "intellectual disability" are preferable. But, "mental retardation" was the terminology used at the relevant time, it is used in the Superseding Indictment, *see, e.g.*, ECF 19, ¶ 6, and it has been used by the parties and their experts.

benefits.  *Id.*  This first group is embodied in Count One (conspiracy), as well as Count Three and Count Four.

Count Three, against Ms. Wharton only, alleges that between October 1996 and December 2012, with "knowledge of the occurrence of any event affecting her initial or continued right to payment of SSI Program benefits," Ms. Wharton "did conceal and fail to disclose said event with intent to fraudulently secure payment . . . ."  Specifically, she "knowingly concealed and failed to disclose that she lived with her husband . . . for the purpose of causing SSA to continue to pay SSI Program benefits" for which Ms. Wharton was "otherwise ineligible . . . ."  *See* 42 U.S.C. § 1383a(a)(3).  Count Four charges both defendants with embezzling, stealing, and converting SSI Program benefits whose value exceeded $1,000, paid to Ms. Wharton between October 1996 and December 2012.  *See* 18 U.S.C. § 641.

A second group of allegations concerns the alleged misuse of SSI Program disability benefits under Title II of the Social Security Act, paid from 1993 to 2004 to Ms. Wharton as representative payee for the couple's disabled son, L.W.  According to the allegations, Ms. Wharton received these benefits during a period when her son did not live with her, and converted the benefits for the use of the defendants.  The benefits paid with respect to L.W. are part of the conspiracy count (Count One, ¶¶ 8, 13, 15, 20, 23(a)).  However, because of limitations, these allegations are not the subject of a substantive count.

A third group of allegations pertains to the alleged misuse of SSA Title II Program survivor's benefits, paid between 2002 and 2012 to Ms. Wharton in her capacity as representative payee for the Whartons' two granddaughters, E.W. and C.W., whose mother, LaShema (the couple's daughter) was murdered in 2002.  This conduct is embodied in Counts

One and Five.  *See* 18 U.S.C. § 641.  According to the allegations, Ms. Wharton continued to receive and convert to the defendants' use the survivor's benefits that "she was required to spend for the care and benefit of her granddaughters, even during a period when her granddaughters no longer lived with her."  ECF 19, ¶ 14.

Another group of facts relates to John Wharton's alleged use of a false identity to obtain Title II Program retirement benefits between April 2010 and June 2013 under the SSA record name of James Wharton, while he also received disability benefits in his own name.  *See* ECF 19, ¶¶ 16-19; 18 U.S.C. § 641.  This conduct is the subject of Counts One and Six.

Counts One and Seven refer to Ms. Wharton's receipt of Medicaid benefits between January 2000 and January 2013, based on her receipt of SSI Program benefits.  *See* ECF 19, ¶ 7; 18 U.S.C. § 641.

Count Eight, lodged only against Ms. Wharton, alleges that on July 14, 2011, in relation to theft of government property (as set forth in Count Five), Ms. Wharton used, without lawful authority, a means of identification of another person, *i.e.*, the name and signature endorsement of her granddaughter, C.W., on a bank check issued by the U.S. Treasury on or about July 13, 2011.  *See* ECF 19, ¶ 22;  18 U.S.C. § 1028A(a)(1).

In response to the Superseding Indictment, the defendants filed a host of motions, some of which were heard on February 18, 2014.  At that time, the Court considered the following submissions:  Defendant John Wharton's Motion to Adopt Motions (ECF 34); Defendant John Wharton's Motion for *Bruton* Relief (ECF 36); Defendant Joeann Wharton's Consolidated Pretrial Motions (ECF 37); Joeann Wharton's Request For a Bill of Particulars (ECF 39); the Government's Consolidated Response to Defense Motions (ECF 43); Defendant Joeann

Wharton's Reply to the Government's Consolidated Response (ECF 60); Defendants' Reply with respect to *Bruton-Crawford* violations (ECF 61); and the Government's Consolidated Surreply to Defense Motions (ECF 64).[4]

In particular, with respect to the defendants' consolidated pretrial motions, the parties addressed the following matters: the motion to dismiss the Superseding Indictment, except Count Two (false statement), as unconstitutionally vague (ECF 37); the motion for severance of defendants or counts (ECF 37); the motion to strike misleading surplusage from the Superseding Indictment (ECF 37); and the motion for a bill of particulars (ECF 39).[5]

## Discussion

### 1. Constitutional Vagueness

The defense has launched a flurry of challenges to the Superseding Indictment under the umbrella claim that the Superseding Indictment is unconstitutionally vague and imprecise, in violation of the Fifth and Sixth Amendments to the United States Constitution. *See* ECF 37 at 17-26. According to the defendants, they cannot adequately defend the case because they lack the requisite notice of the precipitating underlying events, acts of concealment, and/or failures to disclose. The defendants complain that the Superseding Indictment merely tracks the relevant statutory language, but "fails to describe any factual particulars of the most basic sort." *Id.* at 21. Further, the defense argues: "[S]imply because an offense 'continues' does not permit the

---

[4] On March 11, 2014, the Court held an evidentiary hearing as to the competency of Ms. Wharton. Post-hearing submissions were recently filed. And, another motion hearing is scheduled for May 8, 2014.

[5] Because the matter of Ms. Wharton's competency remains pending, it is unnecessary to resolve the *Bruton* and severance issues at this time.

government to fail to plead the nature of the wrongful act, when that act actually occurred, and where that act occurred." *Id.*

In connection with their challenge to Counts Four through Seven, all of which charge theft of government property under 18 U.S.C. § 641, the defendants assert that the only conduct identified with particularity concerns the events of October 1996,[6] when Ms. Wharton applied for SSI Program benefits. The defendants assert: "If the government's entire disability fraud case hinges on one specific and alleged false statement in October, 1996, in New York City, then Mrs. Wharton can defend. In this scenario the criminal act is that which occurred in 1996 . . . ." ECF 37 at 22. But, the defense insists that the government cannot "choose any [unspecified] instance it prefers within [the 16 year] time span" referenced in the Superseding Indictment. *Id.*

In other words, given that the Superseding Indictment covers a 16-year time period, and identifies with particularity only the events of October 1996, the defense maintains that the government cannot at trial choose other alleged misrepresentations to form the basis of the charges, as there has been no notice to the defendants, nor any indication that the grand jury considered such matters. The defense insists that, based on the allegations in the Superseding Indictment, the government is not entitled to argue to the jury that Ms. Wharton violated the law on the basis of unspecified misrepresentations within the 16 year period. In their view, the government is limited to the alleged representation made in October 1996.

Moreover, the defendants argue that, based on the pending charges, they would not be guilty as to SSI Program benefits if, in fact, the Whartons lived separate and apart in 1996, when Ms. Wharton applied for SSI Program benefits. In their view, that is the operative time, based on

---

[6] The defense concedes that there is adequate particularity as to Count Two, concerning the alleged false statement on December 13, 2012. As noted, Count Two is not in issue here.

the charges. If the defendants could be guilty because their marital status changed at some other point in time during the ensuing 16 years, "then there is a profound lack of notice," rendering the Superseding Indictment fatally defective. *Id.* at 22.

According to the defendants, Counts Four through Seven merely regurgitate the statutory language without alleging facts, other than the nature of the benefits stolen and the expansive time period at issue. In their view, "there is not one assertion as to **how** the claimed monies were embezzled, stolen, purloined, or knowingly converted." ECF 37 at 20 (emphasis in original). The defendants add: "Nor is there any indication of **when, with constitutional specificity,** any such acts occurred. If there are multiple acts that generate criminal liability, which of those acts [are the defendants] to defend against." *Id.* at 20-21 (emphasis in original).

The defense challenges Count Three on similar grounds. It characterizes that count, which alleges a violation of 42 U.S.C. § 1383a(a)(3), as "analogous to the theft counts," and argues that "no one . . . can determine which of Ms. Wharton's failures to disclose, *if any at all*, the grand jury might have determined to be the required event underpinning this indictment." *Id.* at 22-23. Further, the defense contends that, if the jury can consider any unspecified conduct within the 16-year time span, the defendants could "'be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted [them.]'" *Id.* (citation omitted).

The defendants recognize that the government relies, *inter alia*, on the continuing offense doctrine in connection with Counts Three through Seven. *See* ECF 37 at 21 & n.10. Nevertheless, they maintain that the doctrine "does not permit the government to fail to plead the nature of the wrongful act" or when and where it occurred. *Id.* at 21.

In addition, as to the Conspiracy Charge (Count One), the defense acknowledges the common thread of Social Security benefits. But, it points to a "bare assertion" of joint activities, purpose, or connection. They contend: "The prosecution has simply asserted by fiat a connection between these events . . . ." *Id.* at 26. The defendants add: "It is obvious that Count One is simply the government's attempt to throw together every conceivable matter in one big stew pot." *Id.*[7]

The government counters that the Superseding Indictment is "quite specific." ECF 43 at 17. For example, it claims that Count Three charges Ms. Wharton with failing to disclose that she "lived with her husband for all or nearly all of the period between October 1996 . . . and December 2012 . . . ." Count Four charges Ms. Wharton with embezzling SSI Program benefits that would not have been paid except for "her concealment of living arrangements . . . ." *Id.* According to the government, "this charging language puts the Whartons on notice that they are charged in Counts Three and Four with concealing their true living arrangements during the period from 1996 to 2012, which concealment allowed them to embezzle . . . ." *Id.* at 18.

As to Count Four, the government also asserts, ECF 43 at 20 n.3: "Should the government be unable to prove that [Ms. Wharton] and her husband lived together during all of the charged period, the jury could return a verdict of guilty as to Count Four, so long as there was sufficient evidence for a reasonable juror to believe that she concealed her true living arrangements for a sufficient period that more than $1000 in benefits were unlawfully paid to her." Similar arguments are advanced as to Counts Five, Six, and Seven. In the government's

---

[7] As to Count Eight, the defendants assert that "Count Eight is not itself defective but it incorporates Count Five, which is defective." ECF 37 at 17. Accordingly, I will address potential defects found in Count Five but will not separately analyze Count Eight.

view, the defense "asks the government to prove a negative – namely, the 'date, place, and manner' of Mrs. Wharton's failure to notify SSA of her and her husband's true living arrangements." ECF 43 at 20. The government adds, *id.*: "This stand's [sic] the government's allegation on its head. It is the government's allegation that Mrs. Wharton was under an *ongoing duty to notify* SSA of her change in living arrangements."

Addressing the conspiracy claim first, I am of the view that the defense's contention is squarely a matter for proof at trial. The government's allegations of a joint scheme to defraud may prove unfounded. But, that is not a basis to dismiss the Superseding Indictment. I turn to the defense's other contentions.

Preliminarily, and as noted, each substantive count incorporates paragraphs 1 through 10 and 12 through 23 of Count One of the Superseding Indictment. They include the following allegations:

> 6.     **JOEANN WHARTON** applied for SSI Program benefits in or about October 1996 and became entitled to benefits at that time based on a diagnosis of Mental Retardation. **JOEANN WHARTON** continued to receive SSI Program benefits until at least in or about December 2012. . . . During that period, **JOEANN WHARTON** received regular mailed notices from SSA informing her that she had a legal obligation to report any change in her living arrangements, among other obligations.

*     *     *

> 8.     **JOEANN WHARTON** applied for SSI Program benefits for her son L.W. as his representative payee in or about June 1993, and he became entitled to benefits no later than in or about March 1995. **JOEANN WHARTON** was approved as representative payee for L.W. in or about November 1993. **JOEANN WHARTON** continued to receive SSI Program benefits on L.W.'s behalf until at least in or about December 2004. During that period, **JOEANN WHARTON** received regular mailed notices from SSA informing her of her legal obligation to report changes in living arrangements, and to spend the SSI Program benefits for the care and benefit of her son L.W.

9.      **JOEANN WHARTON** applied for Title II Program survivor's benefits for her granddaughters E.W. and C.W. as their representative payee in or about April 2002, and the granddaughters became entitled to benefits at that time based on the earnings record of their deceased mother L.J.W.  **JOEANN WHARTON** continued to receive Title II Program survivor's benefits on C.W.'s behalf until at least in or about July 2011, at which time C.W. received benefits in the amount of $832 per month.  **JOEANN WHARTON** continued to receive Title II Program survivor's benefits on E.W.'s behalf until at least in or about August 2012, at which time E.W. received benefits in the amount of $876 per month.  During that period, **JOEANN WHARTON** received regular mailed notices from SSA informing her of her legal obligation to report changes in living arrangements, and to spend the Title II Program benefits for the care and benefit of her granddaughters E.W. and C.W.

10.      **JOHN WHARTON** applied for Title II Program disability benefits in or about September 1995 and became entitled to benefits at that time based on a diagnosis of Osteoarthrosis.  **JOHN WHARTON** continued to receive Title II Program disability benefits until January 2007, at which time his Title II Program benefits converted from disability to retirement benefits.  **JOHN WHARTON** continued to receive Title II Program retirement benefits until at least in or about June 2013, at which time he received benefits in the amount of $1,069 per month.

11.      Between at least in or about June 1993 and in or about June 2013, in the District of Maryland and elsewhere, the defendants . . . did unlawfully, knowingly, and willfully, conspire, combine, confederate and agree to commit offenses against the United States . . . .

12.      It was part of the conspiracy and scheme to defraud that **JOEANN WHARTON** applied for SSI Program disability benefits in or about October 1996 under false pretenses, by claiming that she was living separately from her husband, **JOHN WHARTON**, when in truth and fact they were living together at that time.  **JOEANN WHARTON** made that false representation to SSA knowing full well that she would not have qualified for SSI Program disability benefits if she were living with **JOHN WHARTON**.

*      *      *

15.      It was further part of the conspiracy and scheme to defraud that **JOHN** and **JOEANN WHARTON** made numerous false statements to SSA about their living arrangements and about other matters material to SSA's determination of benefits.  Among other matters, the defendants falsely certified to:  (a) living separately when in truth and fact they lived together; (b) earning no additional income when in truth and fact they had earned income during the

relevant reporting period; and (c) spending benefits for the care and benefit of their son and granddaughters when in truth and fact they spent those benefits on themselves.

*      *      *

18.     It was further part of the conspiracy and scheme to defraud that **JOHN WHARTON** applied for Title II Program retirement benefits under the "James Wharton" false identity in or about April 2010, and began receiving Title II Program benefits under that false identity. **JOHN WHARTON** opened a bank account at Citibank on April 8, 2010, using the name "James Wharton" and an address in Brooklyn, NY, into which the Title II Program retirement benefits were paid by direct deposit. **JOHN WHARTON** then used a debit card issued on that account to withdraw the benefits at automatic teller machines (ATM's) in and around Baltimore, MD.

Paragraph 23 of the Superseding Indictment lists fourteen "overt acts," each of which, with reference to a specific date, lists conduct that was allegedly undertaken in furtherance of the conspiracy, and also supports various substantive counts. To illustrate, paragraphs 23 a, b, g, and h state:

### Overt Acts

23.     In furtherance of the conspiracy and scheme to defraud, and to effect the objects thereof, **JOEANN** and **JOHN WHARTON** committed the following overt acts in the District of Maryland and elsewhere:

a.     On or about July 26, 2000, **JOEANN WHARTON** filled out a Form SSA-8203 "Statement for Determining Continuing Eligibility for Supplemental Security Income Payments" on which she falsely certified that she shared the same household with her son L.W.

b.     On or about July 13, 2001, **JOHN WHARTON** provided the name "James L Wharton" when arrested by a police officer from the Baltimore City Police Department.

*      *      *

g.     On or about March 3, 2011, **JOEANN WHARTON** forged the signature of her granddaughter C.W. on a Form SSA-1372 "Student's Statement Regarding School Attendance."

- 11 -

h.     On or about July 14, 2011, **JOEANN WHARTON** forged the endorsement of her granddaughter C.W. on a U.S. Treasury check in the amount of $832, and deposited the check in M&T Bank checking account XXXXXX8191.

The foregoing makes clear that the government has alleged that, in or about October 1996, July 2000, July 2001, and April 2010, the defendants made assorted false representations in connection with obtaining various SSA benefits and the benefits continued because of the defendants' concealment and failure to disclose ineligibility for benefits.  As to SSI Program benefits, for example, the Superseding Indictment alleges that, beginning in 1996, Ms. Wharton unlawfully applied for and received SSI Program benefits and, despite notice of her obligation to report any change in her living arrangements, she never did so, through 2012.

In my view, the Superseding Indictment is not constitutionally defective on the grounds asserted.

An indictment implicates a defendant's constitutional due process right to reasonable notice of the charges.  *See, e.g.*, *Stroud v. Polk*, 466 F.3d 291, 296 (4th Cir. 2006).  It is defective if it fails to apprise the defendant, with reasonable certainty, of the accusation.  *Russell v. United States*, 369 U.S. 749, 765 (1962).  So, to be valid, "'[a]n indictment must contain the elements of the offense charged'" and "'fairly inform a defendant of the charge[.]'"  *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (citations omitted); *see United States v. Janati*, 374 F.3d 263, 271 (4th Cir. 2004); *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998); *accord United States v. ReSendiz-Ponce*, 548 U.S. 102, 108 (2007); *Hamling v. United States*, 418 U.S. 87, 117 (1974).  It must also enable the defendant to plead double jeopardy in a

subsequent prosecution for a similar offense. *Russell*, 369 U.S. at 764; *Williams*, 152 F.3d at 299.

Notably, "[i]f the indictment does not contain every essential element of the offense, it is invalid; and, a bill of particulars cannot cure the defect." *United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997). As the government concedes: "Prosecutors may not indict on one set of charges and then try the defendant for conduct criminalized by a different statute or statutes." ECF 43 at 14.

The requirement that an indictment include all elements of an offense derives from the Fifth Amendment, *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988), which provides, in part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" *See* U.S. CONST. amend. V. The notice requirement also derives from the Sixth Amendment, which provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. CONST. amend. VI; *Hooker*, 841 F.2d at 1230. *See also Russell*, 369 U.S. at 763.

Fed. R. Crim. P. 7(c)(1) governs the required contents and form of an indictment. It provides that an indictment "must be a plain, concise and definite written statement of the essential facts constituting the offense charged . . . ." An indictment that tracks the statutory language is constitutionally sufficient if "'accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense'" that will be prosecuted. *Hamling*, 418 U.S. at 117-18 (citation omitted). The indictment should provide "some fact specific enough to describe a particular criminal act, rather than a type of crime." *United States*

*v. Pirro*, 212 F.3d 86, 92-93 (2d Cir. 2000). The factual particularity must "'ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury.'" *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (citation omitted).

The Fourth Circuit articulated the standards for the sufficiency of an indictment in *United States v. Brandon*, 298 F.3d 307 (4th Cir. 2002):

> "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Usually "an indictment is sufficient if it alleges an offense in the words of the statute," as long as the words used in the indictment "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence." However, simply parroting the language of the statute in the indictment is insufficient. When the words of a statute are used to describe the offense generally, they "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." Thus, the indictment must also contain a "statement of the *essential facts* constituting the offense charged."

*Id.* at 310 (internal citations omitted) (emphasis in *Brandon*).

In the context of this case, the so-called "continuing offense" doctrine is pertinent. Although the defense seems to recognize that at least some of the charges involve a continuing offense, consideration of the concept is helpful in determining whether the counts are constitutionally flawed with regard to notice.

The term "continuing offense" is a "term of art." *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999). Any discussion of the concept must begin with *United States v. Toussie*, 397 U.S. 112 (1970).

In *Toussie*, the Supreme Court considered the nature of a "continuing offense," and recognized that it applies only in limited circumstances, so as to comply with the policy concerns

that are implicated by statutes of limitation. *Id.* at 114-15. In effect, the continuing offense doctrine extends limitations beyond its specified term.

Under *Toussie*, an offense may be characterized as continuing if "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* at 115. The Court determined that failure to register for the military draft did not constitute a continuing offense. It noted that when a registrant turned 18, he had a five-day period in which to fulfill the duty to register − a specific time period in which the requirement was to be met. The act that required registration for the draft thus did not contemplate a "prolonged course of conduct." *Id.* at 120-21. Therefore, limitations began to run when the defendant turned 18.[8]

The United States Court of Appeals for the Fourth Circuit considered *Toussie* in the case of *United States v. Smith*, 373 F.3d 561 (4th Cir. 2004), involving embezzlement of Social Security benefits. There, the defendant was charged with embezzlement by failing to report the death of his mother to the Social Security Administration and continuing thereafter to receive her monthly Social Security benefits. He was indicted within five years of the last check he had cashed, but almost nine years after the first of the checks was cashed. The Fourth Circuit approved of charging embezzlement of Social Security benefits as a continuing offense under 18 U.S.C. § 641. The Court said: "Embezzlement is the type of crime that, to avoid detection, often occurs over some time and in relatively small, but recurring amounts." *Id.* at 567. The Court elaborated: "Criminal acts over an extended period . . . may be treated as a 'continuing offense'

---

[8] The government had relied on the regulation imposing a continuing duty to register. *Id.* at 119. However, the Court rejected the government's position, which would have had the effect of extending limitations. *Id.* at 120-21.

for limitation purposes . . . if 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" *Smith*, 373 F.3d at 563-64 (quoting *Toussie*, 397 U.S. at 115).[9]

As *Toussie* and *Smith* illustrate, "[t]he hallmark of the continuing offense is that it perdures beyond the initial illegal act, and that 'each day brings a renewed threat of the evil Congress sought to prevent' even after the elements necessary to establish the crime have occurred." *Yashar*, 166 F.3d at 875 (quoting *Toussie*, 397 U.S. at 122). Courts have found varying types of conduct to be continuing offenses when they occur over time. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 413 (1980) (finding escape to be a continuing offense); *Yashar*, 166 F.3d at 875 (recognizing that conspiracy, escape, and kidnapping are continuing offenses); *United States v. Blizzard*, 27 F.3d 100, 102-03 (4th Cir. 1994) (characterizing possession of stolen government property as a continuing offense); *United States v. Jones*, 533 F.2d 1387, 1390-91 (6th Cir. 1976) (recognizing illegal cohabitation and possession of a firearm as continuing offenses); *see also United States v. Banks*, 708 F. Supp. 2d 622 (E.D. Ky. 2010) (finding continuing offense as to receipt of benefits under Title XVI of the Social Security Act, involving concealment and failure to disclose over a 14-year period, in violation of 42 U.S.C. § 1383a(a)(3)(A)); *United States v. Miller*, 200 F. Supp. 2d 616, 618-19 (S.D.W. Va. 2002) (concluding that theft of Social Security benefits is a continuing offense and permitting aggregation to reach jurisdictional amount); *United States v. George*, 2011 WL 4559122, at *2 (W.D. Wash. 2011) (involving a 20-year period and stating that the offense defined in

---

[9] Indeed, if the government failed to aggregate the conduct into a single count, the result would be a series of counts of alleged fraudulent misconduct, with the corresponding risk for a separate sentence for each count. *See United States v. Perry*, 2012 WL 4356780, at *2 n.3 (D. Md. Sept. 21, 2012).

§ 1383a(a)(3) is a continuing one; recognizing that concealment of or failure to disclose an event affecting the right to Social Security benefits "does not result in simply one undue benefit."); *United States v. Bundy*, 2009 WL902064 (D. Me. Mar. 31, 2009) (concluding that conversion of Social Security benefits was not a continuing offense under § 641, but that concealment and failure to disclose employment was a continuing offense under § 408(a)(4));[10] *United States v. Thompkins*, 2008 WL 3200629 (W.D.N.C. Aug. 5, 2008) (concluding that receipt of Social Security checks for 11 years was a continuing offense, based on concealment and failure to disclose); *United States v. Ibarra-Reyes*, 2007 U.S. Dist. LEXIS 89405, at *12-13 (E.D. Va. 2007) (holding that where a deported alien remains in the United States, knowing that his entry is illegal, he commits a violation of 18 U.S.C. § 1326, which is a "continuing offense for statute of limitations purposes, [and] the time does not begin to run until the alien is 'found'" by agents).

In *United States v. Perry*, RDB-12-0173, 2012 WL 4356780 (D. Md. Sept. 21, 2012) ("*Perry*"), *appeal docketed*, No. 13-4012 (4th Cir. Jan. 8, 2013), the defendant was charged, *inter alia*, with Social Security fraud in connection with disability benefit payments he received from 1996 through 2009. The indictment charged Perry, in Counts I and II, with violations of 42 U.S.C. § 408(a)(4) and 42 U.S.C. § 1320a-7b, *see Perry*, slip op. at 5, each of which contains language nearly identical to that found in 42 U.S.C. § 1383a(a)(3). In particular, Perry failed to report his employment, which affected his eligibility for benefits. *Id.* at 1. The defendant filed a motion to dismiss, advancing an argument akin to the one advanced here: the indictment did not

---

[10] The language of § 1383a(a)(3)(A) and § 408(a)(4) are virtually identical.

provide adequate notice of the dates on which the acts in issue occurred. *Id.* at 2.[11]  Rejecting

those contentions, Judge Bennett reasoned in *Perry*, *id.* at 5-6:

> As in <u>Toussie</u>, the threat that Congress intended to prohibit is not a mere one-time threat, but that of wrongfully obtaining an initial *or continued* right. That is, the defendant's continued concealment constitutes a "course of conduct" that affects his remaining rights going forward, and the course of conduct – failing to report – is that act which constitutes the violation.  <u>See</u> <u>United States v. Thompkins</u>, 2008 WL 3200629 at *1 (W.D.N.C. 2008) (holding that indictment under a single count for § 408(a)(4) violations is proper, concluding eleven years of concealment and receiving checks was a continuing offense (quoting <u>Smith</u>, <u>supra</u>, 373 F.3d at 564)); <u>United States v. Bundy</u>, 2009 WL 902064 at *11-12 (D. Me. 2009) (holding that failure to disclose employment at "various medical centers" constitute[s] a violation under 408(a)(4) because the concealment and failure to disclose the employment was a continuing offense that "by its nature continues in effect until affirmatively ended, in this case, by revelation of the concealment"); <u>see also</u> <u>United States v. Banks</u>, 708 F. Supp. 2d 622 (E.D. Ky. 2010) (holding that § 1383[a](a)(3)(A), containing language like that of section 408(a)(4), was not explicitly "continuing" under the statute, but was a "continuing offense" for limitations purposes).

> The Indictment in this case gave adequate information to Defendant to determine the wrongs alleged and was "minimally sufficient," at the least. Although Defendant complains that Paragraph 11 of the Complaint is overbroad, it is plain that the Government alleges that any employment the Defendant had in the stated time period, from which he received income, would affect his benefits. [See] 42 U.S.C. § 408(a)(4).  To the extent that more specificity is needed, the Government has agreed to file a Bill of Particulars to delineate specifically the employment Defendant has failed to report.

These cases persuade me that the Superseding Indictment is not constitutionally deficient

in terms of notice.  The defendants complain that the Superseding Indictment lacks reference to

any acts other than an alleged false statement in October 1996.  *See* ECF 37 at 20-22, 24-26.

However, regarding Count Three, which alleges a violation of § 1383a(a)(3)(A), the defendants

overlook that an individual violates that provision when he or she 1) knowingly "'conceals or

fails to disclose' any event that affects her 'initial or continued right' to a benefit under [the

---

[11] *Perry*'s defense attorney at trial is also Ms. Wharton's defense attorney.

SSA], 2) knows of the occurrence of the event, and 3) does so with an intent to fraudulently secure the benefit, 'either in a greater amount or quantity than is due or when no such benefit is authorized.'" *Banks*, 708 F. Supp. 2d at 624 (citing statute).

As the district court observed in *Banks*, *id.*, 42 U.S.C. § 1383a(a)(3)(A) "does not prohibit the misrepresentation itself. Congress prohibited the act of making a 'false statement or representation' to obtain social security benefits in other subsections. *See* 42 U.S.C. § 1383a(a)(1-2)." The court added, *id.*: "That course of conduct continues beyond making a single false statement or misrepresentation. Here, the defendant allegedly concealed or failed to disclose an event affecting her continued right to Social Security benefits for fourteen years." Further, the court said: "'Concealment by its nature is an act which goes on until detected or its consequences are purged.'" *Id.* at 625 (quoting *United States v. Stein*, 233 F.3d 6, 18 (1st Cir. 2000)).

As for Counts Four through Seven, it is noteworthy that the Fourth Circuit has concluded that a charge of embezzlement under 18 U.S.C. § 641 "is the type of crime that, to avoid detection, often occurs over some time and in relatively small, but recurring amounts." *Smith*, 373 F.3d at 567. Such conduct, occurring "over an extended period," may amount to a continuing offense. *Id.* at 563-64. Moreover, *Banks*, *Smith*, and other cases indicate that violations of 42 U.S.C. § 1383a(a)(3)(A) and 18 U.S.C. § 641, the provisions at issue in Counts Three through Seven, may begin with an affirmative misrepresentation, but that the crime may continue as a result of concealment or failure to disclose. The cases do not suggest any deficiency by failing to identify a particular act of concealment or failure to disclose. In light of that authority, the defendants' constitutional vagueness challenge must fail.

### 2. Other Contentions

The defense also seeks to strike as an overt act in Count One any conduct that occurred outside of limitations, *see* ECF 19, ¶ 23(a) through (c), all of which allegedly occurred before June 2008. According to the defense, it would be misleading and confusing to the jury to allege overt acts that occurred outside the limitation period.

In *United States v. Head*, 641 F.2d 174, 177 (4th Cir. 1981), the Court required that at least one overt act occur within the limitations period. But, with respect to the defense of limitations, "[t]he Government need not allege the time of the offense in the indictment." *Smith v. United States*, ____ U.S. ____, 133 S. Ct. 714, 720 (2013). In *Smith*, the Supreme Court said, *id.*: "[A]lthough the statute of limitations may inhibit prosecution, it does not render the underlying conduct noncriminal. Commission of the crime *within the statute-of-limitations period* is not an element of the conspiracy offense." (Emphasis in *Smith*).

The statute of limitations for conspiracy under 18 U.S.C. § 371 is five years. *See* 18 U.S.C. § 3282. In order for an alleged conspiracy to fall within the required time period, at least one of its overt acts must have occurred within five years of the issuance of the indictment. Here, the Superseding Indictment was returned on June 27, 2013. Therefore, the jury must find that at least one overt act occurred on or after June 27, 2008. In my view, an overt act that precedes that date need not be struck. Such conduct is pertinent to the continuing offenses at issue, and the instructions to the jury will certainly resolve any potential for confusion.

Finally, the defense seeks to strike from the Superseding Indictment, as pejorative, the phrase "scheme to defraud." To be sure, "an indictment can be amended without further consideration by the grand jury when it is necessary to strike surplusage, or to correct . . . a

typographical error." *United States v. Whitfield*, 695 F.3d 288, 301 (4th Cir. 2012) (internal citations omitted); *see also United States v. Allmendinger*, 706 F.3d 330, 339 (4th Cir. 2013). In my view, the phrase "scheme to defraud," in the context of this case, is not pejorative. Therefore, the request is DENIED. *See* ECF 19, ¶¶ 12-23.

### 3. Bill of Particulars

Given the complexity and nature of the charges, and the extended period of time involved, I am persuaded to grant the defendants' request for a bill of particulars (ECF 39), in part. When an indictment is "minimally sufficient," the court "may look to the entire record, including a bill of particulars or other discovery, to determine whether the defendant has received adequate notice of the specific charges." *United States v. Mermelstein*, 487 F. Supp. 2d 242, 249 (E.D.N.Y. 2007); *see United States v. McLean*, Crim. No. WDQ-10-0531, slip op. at 8 n.5 (D. Md. July 15, 2011), *aff'd*, 715 F.3d 129 (4th Cir. 2013). Therefore, in connection with Count One and Counts Three through Seven, the government shall provide certain particulars, as specified here, that are known to it and that have not already been provided to the defense in discovery. To the extent the information has not already been produced in discovery and is available to the government, the particulars shall be provided within fourteen days of the docketing of the attached Order.

With respect to Count One, the government shall provide the particulars known to it as to disability benefits for L.W. that were converted to the use of the defendants, including particulars with respect to (1) each and every mailed notice allegedly sent to Ms. Wharton notifying her "that she had a legal obligation to report any change in living arrangement"; (2) each and every change in living arrangement about which Ms. Wharton failed to notify the SSA; (3) each and

every mailed notice allegedly sent to Ms. Wharton notifying her that she "had a legal obligation to spend the SSI Program survivors benefits for the care and benefit of her son," L.W.; (4) each and every mailed notice allegedly sent to Ms. Wharton notifying her "that she had a legal obligation . . . to spend the Title II Program benefits for the care and benefit of her granddaughters"; (5) how, where, and in what manner Ms. Wharton converted benefits for L.W. for her own use and the use of Mr. Wharton, including the use of funds in a manner contrary to the benefit of L.W. or for the period during which L.W. did not live with the defendants; (6) how, where, and in what manner Ms. Wharton converted benefits for E.W. or C.W. for her own use and the use of Mr. Wharton, including the use of funds in a manner contrary to the benefit of E.W. or C.W. or for the period during which E.W. or C.W. did not live with the defendants; and (7) each and every false statement made to SSA by the defendants.

As to Count Three, the government shall provide particulars known to it as to the event or events that allegedly affected Ms. Wharton's right to continued SSA benefits but that were concealed or not disclosed, with fraudulent intent, in order to receive payment of a greater amount than was due. The government shall also provide particulars known to it as to any acts or actions of the defendants in which they "did conceal and fail to disclose . . .", with fraudulent intent, including when and where said acts or actions occurred.

As to Count Four, the government shall provide particulars known to it as to when and where the defendants "did embezzle, steal, purloin, and knowingly convert" SSI Program benefits. The government shall also provide particulars known to it as to how the benefits that were allegedly received unlawfully were used to benefit the defendants or converted to the use of another, including when, where, and in what form those benefits were received.

As to Count Five, the government shall provide particulars as to each act that forms the basis of the allegation that the defendants "did embezzle, steal, purloin, and knowingly convert" survivor's benefits for their two granddaughters, including particulars known to it as to benefits that defendant(s) were required to spend for their grandchildren but instead converted to the use of the defendants, and all particular acts of concealment of benefits. As to benefits received on behalf of the defendants' granddaughters, the government shall also provide particulars as to the dates the funds were allegedly misused, the amounts that were misused, and where and when any and all unlawful expenditures occurred.

As to Count Six, the government shall identify each act that forms the basis of the allegation that the defendants "did embezzle, steal, purloin, and knowingly convert" SSA retirement benefits paid in the name of James Wharton, including when and where said acts occurred. The government shall also provide particulars known to it as to how the benefits that were alleged received unlawfully were used to benefit the defendants or converted to the use of another, including when, where, and in what form those benefits were received.

As to Count Seven, the government shall provide particulars known to it by way of each act that forms the allegation that the defendants "did embezzle, steal, purloin, and knowingly convert" Medicaid benefits paid to Joeann Wharton, including when and where said acts occurred.[12]

A separate Order follows.

Date: April 10, 2014 _____/s/_____
Ellen Lipton Hollander
United States District Judge

---

[12] Count Two is not addressed in ECF 39. As to Count Eight, it does not appear that any further particularization is necessary.