IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA
    *Plaintiff*,

v.
                             Criminal Action No. ELH-13-0043

JOEANN WHARTON, *ET AL.*
    *Defendants*.

## MEMORANDUM OPINION

In this Memorandum Opinion I consider a victim's request for an adjustment of restitution payments. In effect, the victim challenges the decision of the Social Security Administration ("SSA") to recoup overpayments.

On October 23, 2014, following an eleven day jury trial, John and Joeann Wharton were convicted of several offenses relating to their receipt of various kinds of social security benefits. In particular, they were convicted of conspiracy, in violation of 18 U.S.C. § 371; false statement in regard to Title XVI benefits, in violation of 42 U.S.C. § 1381a(a)(2); and theft of government property, under 18 U.S.C. § 641. ECF 198; ECF 251; ECF 261; *see also* ECF 19 (Superseding Indictment). Ms. Wharton was also convicted of an additional count of Title XVI Benefit Fraud, in violation of 42 U.S.C. § 1383a(a)(3). ECF 198; ECF 251; *see also* ECF 19.

Among other penalties, both defendants were ordered to pay restitution to three individual victims, all of whom are relatives whose social security benefits were misappropriated by the defendants, and to SSA. ECF 251 at 4-5; ECF 252 at 4; ECF 261 at 5-6; ECF 262 at 4-5.

Specifically, I directed Ms. Wharton to pay restitution in the amount of $155,722.00, in monthly installments of $10.00. ECF 251 at 4-5. And, I ordered Mr. Wharton to pay restitution in the amount of $172,731.00, in monthly installments of $200.00, to begin 30 days after he

began his term of supervised release. ECF 261 at 5-6. In sum, the Whartons are jointly and severally responsible for $155,722.00 in restitution; Mr. Wharton is solely responsible for the remaining $17,009.00. ECF 261 at 6.

Ms. Wharton appealed her convictions to the Fourth Circuit. ECF 266. Mr. Wharton did not note an appeal. The Fourth Circuit affirmed Ms. Wharton's convictions. ECF 306; *see also United States v. Wharton*, 840 F.3d 163 (4th Cir. 2016).

On August 26, 2016, E.W., a grandchild of the defendants and a victim in the case, filed a motion to adjust the schedule of restitution payments, pursuant to 18 U.S.C. § 3664(k) (ECF 299), supported by a memorandum of law (ECF 299-1) (collectively, the "Motion"). In particular, E.W. complains that, despite the Court's order prioritizing restitution to the individual victims, no restitution has been paid to the victims because SSA is withholding benefit payments to the Whartons in order to recoup its overpayments to them. ECF 299 at 2. The government opposes the Motion. ECF 310 ("Opposition"). E.W. has replied. ECF 314 ("Reply").

The government moved for leave to file a surreply, claiming that E.W. raised several new arguments in her Reply. ECF 316. By Order of the same date (ECF 317), I granted that motion. The surreply is docketed at ECF 318 and is supported by two exhibits. ECF 318-1; ECF 318-2.[1]

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I must deny the Motion.

## I. Factual Background

John and Joeann Wharton were married in 1970, when Ms. Wharton was 16 and Mr. Wharton was 29. In an eight count Superseding Indictment filed on June 27, 2013 (ECF 19), they

---

[1] On February 15, 2017, E.W. moved to rescind the surreply or for leave to respond to it. ECF 319. I denied that motion. ECF 320.

were charged with multiple offenses relating to their receipt of various types of Social Security benefits over an extended period.

Count One charged conspiracy to defraud the government with respect to Social Security benefits programs, in violation of 18 U.S.C. § 371. In particular, Count One alleged that, since about 1996, the defendants conspired to embezzle, steal, and convert money of the government, whose value exceeded $1,000, in violation of 18 U.S.C. § 641, and that they conspired to use, without lawful authority, the identification of another, during and in relation to theft of government property, in violation of 18 U.S.C. § 1028A(a)(1), (a)(4), and (a)(5). *See* ECF 19, ¶ 11.

Count Two charged the submission of a false statement on December 13, 2012, in violation of 42 U.S.C. § 1383a(a)(2). Count Three, lodged against Ms. Wharton only, charged Social Security fraud under 42 U.S.C. § 1383a(a)(3), in connection with Social Security benefits paid to Ms. Wharton from October 1996 until December 2012. Counts Four through Seven charged theft of government funds, in violation of 18 U.S.C. § 641. Count Eight, against Ms. Wharton only, alleged aggravated identity theft under 18 U.S.C. § 1028(A). All of the substantive counts incorporated paragraphs 1 through 10 and 12 through 23 of Count One.

The charges involved several factual groupings. Counts One, Three, and Four concerned Ms. Wharton's own disability claim, filed in 1996 in connection with the Social Security benefits program known as Supplemental Security Income for the Aged, Blind, and Disabled, under Title XVI of the Social Security Act, 42 U.S.C. § 301 *et seq.* ("SSI Program"). According to the government, Ms. Wharton received SSI Program benefits from 1996 to 2012, based on a diagnosis of "mental retardation"[2] and a corresponding representation of financial need. In

---

[2] I recognize that the term "mental retardation" is disfavored and has been replaced by the terms "cognitive disability" or "intellectual disability." *See* Rosa's Law, Pub. L. No. 111-256, 124 Stat. 2643 (2010). However, I have used the terminology of "mental retardation" only because, at the relevant time, that was the actual terminology for the diagnosis.

particular, the government alleged that when Ms. Wharton applied for SSI Program disability benefits in October 1996, she did so under false pretenses, in that she falsely represented that she was living separate and apart from her husband. *See* ECF 19, ¶ 12. The government claimed that, had it been known that the two lived together, Ms. Wharton would not have qualified for SSI Program benefits. *Id.*

Count Three, against Ms. Wharton only, alleged that between October 1996 and December 2012, with "knowledge of the occurrence of any event affecting her initial or continued right to payment of SSI Program benefits," Ms. Wharton "did conceal and fail to disclose said event with intent to fraudulently secure payment...." Specifically, she "knowingly concealed and failed to disclose that she lived with her husband...for the purpose of causing SSA to continue to pay SSI Program benefits" for which Ms. Wharton was "otherwise ineligible...." *See* 42 U.S.C. § 1383a(a)(3). Count Four charged both defendants with embezzling, stealing, and converting SSI Program benefits, whose value exceeded $1,000, paid to Ms. Wharton between October 1996 and December 2012. *See* 18 U.S.C. § 641.

A second group concerned the alleged misuse of SSI Program disability benefits under Title II of the Social Security Act. These benefits were paid to Ms. Wharton from 1993 to 2004, in her capacity as representative payee for the couple's disabled son, Lasean. According to the allegations, Ms. Wharton received these benefits during a period when her son did not live with her, and the benefits were converted for the use of the defendants. Because of limitations, these allegations were not the subject of a substantive count. But, the benefits paid with respect to L.W. were part of the conspiracy count. *See* Count One, ¶¶ 8, 13, 15, 20, 23(a).

In a sealed Memorandum Opinion and Order (ECF 109, ECF 110), I found Ms. Wharton competent to stand trial. I discussed at length Ms. Wharton's troubled family history, personal background, and expert mental health evaluations. ECF 109 at 9-22. However, there was no dispute that she is cognitively impaired.

A third group, Count One and Count Five, pertained to the alleged misuse of SSA Title II Program survivor's benefits, paid between 2002 and 2012 to Ms. Wharton in her capacity as representative payee for the Whartons' two granddaughters, E.W. and C.W., who were then minors. The children's late mother, LaShema, was the Wharton's daughter. LaShema was murdered in 2002 by the father of one of her children. According to the allegations, Ms. Wharton continued to receive and convert to the defendants' use the survivor's benefits that "she was required to spend for the care and benefit of her granddaughters," and she did so "even during a period when her granddaughters no longer lived with her." ECF 19, ¶ 14; *see* 18 U.S.C. § 641.

The fourth group related to Mr. Wharton's use of the alia "James Wharton" to obtain Title II Program retirement benefits between April 2010 and June 2013 under the SSA record of James Wharton, while he also received disability benefits in his own name. *See* ECF 19, ¶¶ 16–19; 18 U.S.C. § 641. This conduct was the subject of Count One and Count Six.

Count One and Count Seven pertained to Ms. Wharton's receipt of Medicaid benefits between January 2000 and January 2013, based on her receipt of SSI Program benefits. *See* ECF 19, ¶ 7; 18 U.S.C. § 641.

Count Eight, lodged only against Ms. Wharton, alleged that on July 14, 2011, in relation to theft of government property (as set forth in Count Five), Ms. Wharton used, without lawful authority, a means of identification of another person, *i.e.*, the name and signature endorsement of her granddaughter, C.W., on a bank check issued by the U.S. Treasury on or about July 13, 2011. *See* ECF 19, ¶ 22; 18 U.S.C. § 1028A(a)(1).[3]

---

[3] Thereafter, I granted a severance as to Count Six. *See* ECF 162. As a result, the remaining counts were renumbered for purposes of the jury trial. Thus, the original Count Seven became Count Six (theft of government property) and the original Count Eight became Count

The status of the Whartons' marriage during the relevant time period was hotly contested during the criminal proceedings. The defense claimed that the couple separated in the 1990's and, "to the extent that they resided under the same roof," it was for only economic reasons. ECF 37 at 4-5 (defense motion). Further, defendants insisted that Mr. Wharton did not provide support for Ms. Wharton or the couple's children. *Id.* Therefore, the defendants claimed, among other things, that Ms. Wharton was entitled to the SSI benefits she received. *Id.*

Prior to trial, and without the benefit of a plea agreement, Mr. Wharton entered a plea of guilty to Count Six, charging theft of government property. ECF 146. As noted, on October 23, 2014, a jury convicted the Whartons of conspiracy, in violation of 18 U.S.C. § 371; one count of federal benefit government fraud, in violation of 42 U.S.C. §§ 1383a(a)(2); and two counts of theft of government property, in violation of 18 U.S.C. § 641 and 18 U.S.C. § 2. ECF 198; ECF 251; ECF 261. The jury also convicted Ms. Wharton of an additional count of federal benefit government fraud, in violation of 42 U.S.C. §§ 1383a(a)(3). ECF 198; ECF 251.

Ms. Wharton was sentenced on February 12, 2015. ECF 250; ECF 286.[4] At the sentencing, I noted that Ms. Wharton is "a woman with a very challenging social history." ECF 286 at 103:25. I need not recount that social history here in detail, except to say, *inter alia*, that she came from a financially disadvantaged background; her daughter, LaShema, was brutally murdered, leaving two young daughters who came into the Whartons' care; and Ms. Wharton

---

Seven (aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), as to Ms. Wharton only). The jury deadlocked as to both counts. As to Mr. Wharton, I granted his motion for judgment of acquittal as to Count Four, charging theft of government property, and Count Seven. ECF 259. Counts Six, Seven, and Eight were ultimately dismissed. ECF 264.

[4] Because Ms. Wharton noted an appeal, I have a transcript of her sentencing hearing. I do not have a transcript of Mr. Wharton's sentencing proceeding because he did not note an appeal.

"has a host of serious medical problems", including cognitive impairment. *Id.* at 104:3-8;13-25. In my view, all of these factors "weigh[ed] heavily on the mitigating scale." *Id.* at 105:21-22.

Of relevance here, I ordered both defendants to pay restitution to Lasean Wharton,[5] who is the defendants' adult son; to their granddaughters, E.W. and C.W., who are now emancipated; and to SSA. *See* ECF 252 (sealed statement of reasons for Ms. Wharton), at 4; ECF 262 (sealed statement of reasons for Mr. Wharton), at 4-5. The social security benefits of all three individuals were misappropriated by defendants. In particular, I directed the Whartons to pay $30,184.00 to E.W.; $19,968.00 to C.W.; $10,328.00 to Lasean Wharton, and $95,242.00 to SSA. ECF 252 at 4; ECF 262 at 4-5. That obligation is joint and several. ECF 261 at 6. And, I ordered Mr. Wharton to pay an additional $17,009.00 in restitution to SSA. *Id.* I also stated that, "pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid." ECF 251 at 4; ECF 261 at 5. Notably, I specified: "Payments to Individual victims shall be paid before the Social Security Administration." ECF 251 at 5.

Moreover, I recommended "to Social Security that it not withhold more than 10% of the current, of the benefits [Joeann Wharton] otherwise would get…" ECF 286 at 120:24-121:1. In making this recommendation, I noted that it did not appear that Ms. Wharton has any other source of income from which to pay restitution. *Id.* at 116:120; 120:11-13. I reasoned that, if SSA were to withhold 100% of her benefits, she would be unable to pay restitution to the individual victims. However, I also said, *id.* at 121:1-5: "I don't know that I can order it. If there's a change, somebody has some authority that they can cite to me, I'll revisit the order and make it an order rather than a recommendation."

---

[5] The record contains various spellings of the first name of the Whartons' son. In ECF 220 at 6, n.1, the government indicates that the spelling I used here is the correct spelling.

Mr. Wharton was released from incarceration on or about March 3, 2016. He was subsequently informed that SSA had suspended his benefit payments as of April 2015. *See* letter from SSA, dated March 4, 2016, from SSA, ECF 299-2. Mr. Wharton was also informed by SSA that his benefits would not resume until 2026. *See* notice dated July 5, 2016, ECF 299-3. [6] Further, SSA has indicated that, pursuant to 20 C.F.R. § 404.502(a), it is withholding the social security benefits of both defendants to recoup the benefits that defendants fraudulently obtained, which are termed "overpayments." ECF 310 at 1. As a result, neither defendant has any income to satisfy the monthly restitution obligations to the individual victims. *See* ECF 299 at 6; ECF 318 at 1. Indeed, no restitution has been paid to them.

According to the government, "SSA both withheld and suspended certain benefits payable to both Defendants as early as January 2013, based on administrative determinations that preceded the Court's restitution orders, and in amounts that differ from the Court's restitution orders." ECF 318 at 7. The restitution orders in the criminal case were issued in February 2015, two years after SSA began to withhold the defendants' benefits. The government asserts, ECF 310 at 1: "SSA is withholding both Defendants' social security benefits to recoup the benefits that were fraudulently obtained by them[.]"[7]

## II. Discussion

### A.

Pursuant to 18 U.S.C. § 3664(k), E.W. seeks "to adjust the schedule of restitution payments." ECF 299 at 1; ECF 299-1 at 1. She argues, *inter alia*, that SSA's practice of

---

[6] The parties did not provide information as to when Ms. Wharton was notified that SSA had suspended her benefit payments.

[7] In a telephone conference with counsel on March 8, 2017, the government informed the Court that SSA is withholding Ms. Wharton's benefits based on overpayments that were made to her in her individual capacity, rather than in her role as a representative payee.

withholding the defendants' benefits violates 18 U.S.C. § 3664(i), which requires individual victims to receive "full restitution" before payment to the United States, and 18 U.S.C. § 3771(a)(6), which provides for "full and timely restitution. . . ." ECF 299 at 2-3. However, E.W. does not challenge SSA's determination that the Whartons were overpaid. Rather, she maintains that SSA's recoupment practice unlawfully results in SSA receiving its restitution before restitution is paid to the non-federal victims. *See* ECF 299-1 at 6-7. E.W. also contends that SSA's practice violates this Court's orders. *Id.* at 3. As noted, I had said that, "pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid." ECF 251 at 4; ECF 261 at 5 (same); *see also* ECF 251 at 5 ("Payments to Individual victims shall be paid before the Social Security Administration [is paid].").

In addition, E.W. maintains that, to the extent that SSA regulations authorize withholding the defendants' benefits, they either conflict with 18 U.S.C. § 3664(i) or are inapplicable here. E.W. states, ECF 299-1 at 7:

> The Social Security Administration's regulations may not override an explicit federal statute that is unambiguously incorporated in the valid, unchallenged sentencing orders in this case. Until there are no other non-federal victims due unpaid restitution, the SSA's regulations, which do not appear to expressly address the situation presented here where non-federal victims have not fully collected restitution awards and the SSA seeks to withhold benefits that would otherwise be used to pay non-federal victims' prioritized restitution awards, are inapplicable.

Therefore, E.W. asks the Court to enter an order that prohibits SSA from withholding the defendants' Social Security benefits and requires SSA to remit all previously withheld payments and all future benefit payments to the Clerk of the Court for distribution to the individual victims. ECF 299 at 3-4; *see also* ECF 299-1 at 8.

In its Opposition, the government asserts that this Court lacks jurisdiction to provide the relief sought in the Motion. Nevertheless, it represents that it has worked with SSA "towards an

administrative solution." ECF 310 at 2. The government states, *id.*: "Presently, it is expected, but not confirmed, that SSA will be able to distribute all of Defendant Joeann Wharton's past and future withholdings to the individual victims. Unfortunately, under SSA's current policies, SSA does not believe that it will be able to transfer Defendant John Wharton's withholdings to the individual victims." The government explains, ECF 310 at 2-3:

> …SSA is constrained by regulations which specify that when a representative payee steals or embezzles benefits payable to a person in her care, administrative recovery may be made only against future benefits payable to (1) the representative payee (in this case, Joeann Wharton only); (2) the individual on whose record the benefits were paid (in this case Lashema Wharton, who is deceased); or (3) the estate of the individual on whose record the benefits were paid, if additional benefits are due the estate. *See* 20 C.F.R § 404.502.[]
> Accordingly…SSA may not post an overpayment on John Wharton's master beneficiary record, which would allow John Wharton's retirement benefits to be withheld. This is because John Wharton was neither representative payee for EW or CW, nor was his record the source of the benefits for the two granddaughters; therefore, cross-posting of the overpayment to his record is precluded by Section 404.502.

The government argues that, in the event that the attempt to achieve an administrative solution is unsuccessful, the restitution statutes, and specifically section 3664(k), do not create a private cause of action against the government which would allow the Court to order a federal victim to turn over funds for the alleged violation of section 3664(i). ECF 310 at 3. According to the government, each provision of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, as well as 18 U.S.C. § 3664, "speaks to the Court's authority to order the *defendant* to pay restitution. These provisions do not confer any authority on the Court to regulate a third-party, or in this case, a victim," such as SSA. ECF 310 at 3 (emphasis in original). Furthermore, the government maintains that the restitution statutes "specifically preclude their use to compel government action." *Id.*

In addition, the government claims that SSA's recovery procedure is mandated by the Social Security Act, and any challenge to that procedure must be made under the terms of the Act. ECF 310 at 4; *id.* at 6. According to the government, under Section 204 of the Social Security Act and its enabling regulations, SSA is required to withhold 100% of future benefits to recover overpayments caused by fraud. *Id.* at 5; *see* 42 U.S.C. § 404; 20 C.F.R. § 404.502; 20 C.F.R.502(c)(2).

Of import here, the government insists that it recoups overpayments and *not restitution*. ECF 310 at 5, n. 2. It explains, *id.*:

> SSA's procedure for offsetting benefits is distinct from any criminal proceeding and does not require a restitution order. Rather, the offset is triggered by an SSA administrative "determination that an overpayment has been made." 20 C.F.R. § 404.502. In the vast majority of cases, there is no criminal restitution or civil forfeiture, and the only mechanism for repayment is by administrative withholding of future benefit payments. When there is a restitution order, SSA avoids double recovery by reporting the amount withhold [sic] to the U.S. Attorney's Office in the relevant district, or in some cases may make a report directly to the clerk of the district court, which ensures that the withheld amounts are credited against the defendant's restitution obligation.

The government also claims that the Social Security Act provides that the exclusive procedure under which an individual may challenge SSA's withholding decisions is a civil action under 42 U.S.C. § 405(g). ECF 310 at 6. The government states, *id.* at 7: "EW has the ability to challenge SSA's offset determination, but EW can only challenge the determination in a civil action filed after exhausting SSA's administrative process and obtaining a final determination."

In the Reply, E.W. relies on principles of statutory interpretation to argue that, to the extent that the Social Security Act and its enabling regulations conflict with 18 U.S.C. § 3664(i), it is § 3664(i) that governs. ECF 314 at 4. E.W. states, *id.* at 5:

> The Government cites 42 U.S.C. § 404 (the Social Security Act) and its regulatory enforcement scheme as authority to support its actions. That statute, however, addresses only the general requirement that the SSA recoup overpayments and

does not address the situation where there is a conflicting judicial restitution order. Consequently, that provision of the Social Security Act does not control the more specific situation that is described in 18 U.S.C. § 3664(i) in which both federal and non-federal entities are victims of a defendant's or defendants' or [sic] crime and are entitled to restitution.

Further, E.W. argues that, pursuant to 18 U.S.C. § 3613(a), a section located in the "Fines" provisions of Title 18, this Court has the authority to provide the requested relief It sets forth the government's enforcement remedies when collecting a fine or restitution. ECF 314 at 7-8.

## B.

The MVRA requires defendants convicted of certain crimes to pay restitution. The ultimate goal of restitution is to compensate a victim fully for his or her loss.

18 U.S.C. § 3664(i) provides:

If the court finds that more than 1 victim has sustained a loss requiring restitution by a defendant, the court may provide for a different payment schedule for each victim based on the type and amount of each victim's loss and accounting for the economic circumstances of each victim. In any case in which the United States is a victim, the court shall ensure that all other victims receive full restitution before the United States receives any restitution.

18 U.S.C. § 3664(o) provides that an order of restitution is a final judgment except that:

(1) such a sentence can subsequently be--

    (A) corrected under Rule 35 of the Federal Rules of Criminal Procedure and section 3742 of chapter 235 of this title;

    (B) appealed and modified under section 3742;

    (C) amended under subsection (d)(5); or

    (C) adjusted under section 3664(k), 3572, or 3613A; or

(2) the defendant may be resentenced under section 3565 or 3614.

Of relevance here, the payment schedule of a restitution order may be adjusted if a defendant demonstrates "any material change in the defendant's economic circumstances that

might affect the defendant's ability to pay restitution." 18 U.S.C. § 3664(k); *see also United States v. Banks,* 430 Fed. App'x 179 (3d Cir. 2011) (noting that a court has limited jurisdiction to entertain a motion under section 3664(k) to modify or adjust a restitution order that "does not encompass an attack on the overall validity of a restitution order."); *United States v. Young*, No. 1:10-CR-00006-TBR-2, 2012 WL 4023773, at *2 (W.D. Ky. Sept. 12, 2012) (a "Court may, under 18 U.S.C. § 3664(k), modify [a] payment plan based on a material change in economic circumstances."). However, § 3664(k) does not permit a court to alter the amount of restitution. *See Young*, *supra*, 2012 WL 4023773, at *2; *United States v. Nelson*, No. 03-80712, 2013 WL 3381436, at *2 (E.D. Mich. July 8, 2013)

The Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, is also pertinent. The CVRA states that a crime victim has "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6).

Notably, both the CVRA and the MVRA prohibit claims against the government. *See*, *e.g.*, 18 U.S.C. § 3771(d)(6) ("Nothing in this chapter shall be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages."); 18 U.S.C. § 3664(p)("Nothing in this section or sections 2248, 2259, 2264, 2327, 3663, and 3663A and arising out of the application of such sections, shall be construed to create a cause of action not otherwise authorized in favor of any person against the United States or any officer or employee of the United States"). And, courts have determined that the CVRA does not create a cause of action against third parties. *See In re W.R. Huff Asset Mgmt. Co., LLC*, 409 F.3d 555, 564 (2d Cir. 2005) ("[T]he CVRA does not grant victims any rights against individuals who have not been convicted of a crime.")

Section 3613, located in the "Fines" provisions of Title 18, is titled "Civil remedies for satisfaction of an unpaid fine." Section 3613(a) provides, in relevant part:

> (a) Enforcement.--The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined[.]

Section 3613 also applies to the enforcement of restitution. *See* 18 U.S.C. § 3613(f) ("Applicability to order of restitution….all provisions of this section are available to the United States for the enforcement of an order of restitution."). Pursuant to Section 3612(c), "[t]he Attorney General shall be responsible for collection of an unpaid fine or restitution . . . ." The Attorney General has delegated that responsibility to each U.S. Attorney's Office ("USAO"). 28 C.F.R. § 0.171. Accordingly, Section 3613(a) allows the USAO to enforce an order of restitution, "[n]otwithstanding any other Federal law (including section 207 of the Social Security Act).]"

In addition, the Fines section contains the limitation that "[a]n order of restitution . . . does not create any right of action against the United States by the person to whom restitution is ordered to be paid." 18 U.S.C. § 3612(c). Moreover, § 3664(o) provides that an order of restitution is a final order that may only be altered in limited circumstances. *See* 18 U.S.C. § 3664(o). Section 3613(a) is not identified in § 3664(o) as a basis for a court to alter a restitution order.

## C.

The Fourth Circuit recently made clear that Social Security survivor benefits are a thing of value of the United States for purposes of a prosecution under 18 U.S.C. § 641. *United States*

*v. Kiza*, _____ F.3d _____, 2017 WL 1544990, at *4 n. 2, *5 (4th Cir. May 1, 2017).  The same rationale would apply to the other benefits at issue in the criminal case.

SSA is now withholding the defendants' social security benefits pursuant to 42. U.S.C. § 404(a)(1), in order to recoup the overpayments to the Whartons.  The applicable statutory and regulatory provisions appear to authorize SSA to withhold defendants' social security benefits, "independent of this criminal action," to recover overpayments of benefits under the circumstances of this case.  *United States v. Skrine*, No. 1:10-CR-444-WSD, 2015 WL 3932422, at *2 (N.D. Ga. June 25, 2015).

Section 404(a)(1) provides, in relevant part (emphasis added):

Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery *shall* be made, under regulations prescribed by the Commissioner of Social Security as follows:

(A) With respect to payment to a person of more than the correct amount, the Commissioner of Social Security *shall* decrease any payment... to which such overpaid person is entitled, or *shall* require such overpaid person...to refund the amount in excess of the correct amount....

Pursuant to this statute, SSA promulgated regulations regarding recoupment.  If the individual to whom an overpayment was made is entitled to a monthly Social Security benefit payment, "no benefit for any month...is payable to such individual...until an amount equal to the amount of the overpayment has been withheld or refunded." 20 C.F.R. § 404.502(a)(1). However, SSA may adjust the amount withheld if "it is determined that withholding the full amount each month would...deprive the person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.502(c)(1). But, of import here, this adjustment is not available when "the overpayment was caused by the individual's intentional false statement or representation, or willful concealment of, or deliberate failure to furnish, material information." 20 C.F.R. § 404.502(c)(2).

SSA utilizes an independent administrative process to determine the amount of any overpayment and whether the overpayment was obtained by fraud. *See* SSA's Program Operations Manual System ("POMS"), "Unrestricted Reopening for Determinations or Decisions Involving Fraud or Similar Fault," GN 04020.010, ECF 318-1.[8] *See also* CFR § 404.502 (stating that the offset is triggered by an SSA administrative "determination that an overpayment has been made.") Pursuant to 20 C.F.R. § 404.501:

> [T]he term overpayment includes a payment in excess of the amount due under title II of the Act, a payment resulting from the failure to impose deductions or to suspend or reduce benefits under sections 203, 222(b), 224, and 228(c), and (d), and (e) of the Act (see subpart E of this part), a payment pursuant to section 205(n) of the Act in an amount in excess of the amount to which the individual is entitled under section 202 or 223 of the Act, a payment resulting from the failure to terminate benefits, and a payment where no amount is payable under title II of the Act.

Under 42 U.S.C. 405(j)(7)(A), the misuse of funds by a representative payee "shall be treated as an overpayment of benefits…to the representative payee for all purposes of this chapter and related laws pertaining to the recovery of such overpayments." Similarly, POMS GN 02201.001(B)(2)(j) states that an overpayment includes "[f]unds misused by a representative payee…" *See also* POMS, "Overpayments-General," GN 02201.001(A) ("An overpayment is the total amount an individual received for any period which exceeds the total amount which should have been paid for that period.").

The overpayment determinations are made by the SSA's Center for Security and Integrity, under a preponderance of the evidence standard. No criminal prosecution is required for an offset to occur. *See* POMS GN 04020.010(B)(1), (2). The POMS specifically note that

---

[8] "'POMS sets forth the SSA's official policies and procedures for carrying out its responsibilities under the Social Security Act.... While these policies and procedures do not have the force of law and are not binding on the agency ... they represent the SSA's interpretation of the law, including its governing statutes and regulations.'" *Tanker v. Comm'r of Soc. Sec.*, No. 1:15 CV 469, 2015 WL 5023024, at *2, n. 1 (N.D. Ohio Aug. 24, 2015) (citation omitted).

fraud may be found for the purpose of ordering an administrative offset, without a criminal prosecution, for which an offense must be proved beyond a reasonable doubt in order to result in a conviction. *See* POMS GN 04020.010(B)(2).

Significantly, even when a court has ordered restitution, the SSA is required to make an independent calculation of any overpayment and to pursue recovery of that amount. POMS, "Overpayment Recovery after Fraud Conviction," GN 02201.055(C); ECF 318-2 (stating that the overpayment "as determined by SSA . . . may be different from the amount of court-ordered restitution.").

As the government contends, 42 U.S.C. § 405(g) sets forth the exclusive procedure by which an individual may challenge SSA's recovery procedures.

It is well settled that the United States and its agencies are immune from suit, absent waiver. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The Social Security Act waives SSA's sovereign immunity in limited circumstances. As to claims arising under Title II of the Social Security Act, "Federal Old–Age, Survivors, and Disability Insurance Benefits", federal courts may review "final decisions" of SSA. *See* 42 U.S.C. §§ 405(g) & (h). Section 405(g) of the Act provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party... may obtain a review of such decision by a civil action commenced within sixty days" after notice of the decision. And, Section 405(h) limits judicial review to the review permitted under § 405(g). It directs: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under

section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h).

The Fourth Circuit has observed: "Congress has directed that there be judicial review of the Secretary's actions, but such review is the exclusive remedy and is clearly set forth in § 405(g)." *Jarrett v. United States*, 874 F.2d 201, 204 (4th Cir. 1989). Furthermore, the Supreme Court has stated that 42 U.S.C. § 405(g) "clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.'" *Califano v. Sanders*, 430 U.S. 99, 108 (1977).

E.W. contends, however, that the government's remedy of a civil action under 42 U.S.C. § 405(g) "was never available to E.W. or C.W.," the defendants' grandchildren.   ECF 314 at 12. E.W. states, *id.* at 12-13: "This judicial remedy…requires that a hearing had to have been held on the matter before judicial review of the decision can be pursued."   According to E.W., "[t]he individual victims, E.W. and C.W., are not—and never could be—parties to the hearings contemplated in the statute."   *Id.* at 13 (citing 42 U.S.C. § 405(b)(1)).

Under 42 U.S.C. § 404(b)(1), administrative hearings are available to those individuals whose benefits are being determined or to "a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, surviving divorced father, husband, divorced husband, widower, surviving divorced husband, child, or parent who makes a showing in writing that his or her rights may be prejudiced by any decision the Commissioner of Social Security has rendered[.]"   And, under 42 U.S.C. § 416(e), the term child can include a grandchild under certain conditions.   Notably, E.W. does not address Section 416(e).   Therefore, she may be able to pursue administrative remedies to challenge the SSA's withholding decisions.

In any event, in criminal cases involving restitution orders, several courts have concluded that they lack jurisdiction to prevent SSA from using its regulatory power to withhold benefits, and that an individual seeking to challenge such a decision must first exhaust administrative remedies. *Id.* at 7. Although these cases are distinguishable, because they do not address a situation involving an individual victim who has been awarded restitution, they are nonetheless instructive.

*Nelson*, *supra*, 2013 WL 3381436, involved a criminal defendant who was the representative payee for the Social Security benefits for her two children. *Id.* at *1. In that case, the court ordered Nelson to pay restitution to SSA after she pled guilty to one count of theft of public money, in violation of 18 U.S.C. § 641, for illegally using the children's Social Security checks for her personal benefit. *Id.* Nelson subsequently became eligible for Social Security disability benefits, and SSA began withholding her benefits to offset the sum Nelson had improperly misused. *Id.* Nelson filed a motion asking the court to reconsider its order of restitution and to stop SSA from withholding up to 100% of her benefits. *Id.*

The court concluded that it was "without jurisdiction to prevent the SSA from withholding Nelson's benefits." *Id.* at *2. It said, *id.*: "Even though a withholding may cause Nelson some financial difficulties, the SSA, pursuant to 20 C.F.R. § 404.502(c)(2), may withhold all of her monthly benefits to recoup the overpayment." Further, the court explained, *id.* (emphasis added):

> [T]he SSA can withhold the monthly benefits of a recipient convicted of theft for fraudulently obtaining social security benefits even when there is a restitution order in place. *United States v. Brown*, No. 09–116, 2012 WL 75105, at *3 (W.D. Pa. Jan.10, 2012). **A restitution order from a criminal case does not limit the SSA's statutory or regulatory means of recouping losses caused by a defendant's wrongful acts.** *Young*, 2012 WL 4023773, at *3. Moreover, if a plaintiff wishes to challenge a withholding, the plaintiff must first exhaust her administrative remedies before seeking relief in court. *Brown*, 2012 WL 75105, at

*4 (holding that a court lacks jurisdiction in social security cases absent a final agency decision from the Commissioner of Social Security).

In *United States v. Brown*, CRIM 09-116, 2012 WL 75105 (W.D. Pa. Jan. 10, 2012), the defendant was convicted of theft of government property, *i.e.*, $100,005.41 in Social Security benefits that she fraudulently obtained, in violation of 18 U.S.C. § 641. *Id.* at *1. The court ordered the defendant to pay restitution to SSA, in monthly installments of not less than 10% of her gross monthly income. *Id.* SSA subsequently notified the defendant that it would begin to withhold 100% of her monthly social security checks to recoup fraudulent overpayments. *Id.* The defendant moved to amend the restitution order to permit SSA to take only 10% of her monthly benefit payments. *Id.* The court concluded that it "lack[ed] jurisdiction to enjoin the Social Security Administration from collecting the overpaid sums pursuant to valid federal regulations and policies." *Id.* at 4. It determined that, "to the extent that the Social Security Administration continues to withhold the entirety of the Defendant's benefit checks…any challenge to same is more appropriately brought directly to the agency pursuant to the applicable administrative processes and procedures, rather than to this Court's attention." *Id.*

Similarly, in *United States v. Theede*, CR03-0996-01 PHX-DGC, 2010 WL 653422 (D. Ariz. Feb. 19, 2010), the court ordered the defendant to pay restitution to the SSA in the amount of $79,228.00, in monthly payments of $200, after the defendant was convicted of theft of government property, in violation of 18 U.S.C. § 641. *Id.* at *1. The SSA, "independent" of the "criminal prosecution," began to withhold the defendant's social security benefits as an offset against the amount fraudulently obtained by the defendant. *Id.* The defendant "ask[ed] the Court to order that this money be returned to him and that his obligation be limited to the $200.00 per month contained in this Court's restitution order." *Id.* In denying the defendant's petition, the court said, *id.*:

Defendant Theede provides no authority to suggest that the Social Security Administration's power is limited by this Court's restitution order in a criminal case. Nothing in this Court's order purported to limit other statutory or regulatory forms of recouping losses caused by Defendant's wrongful acts.

*** 

In addition, it is not clear that this Court has jurisdiction over the Social Security Administration's off-set program. Defendant is before this Court in a criminal case, not in a civil action to constrain collection efforts by the Social Security Administration.

And, in *Young*, *supra*, No. 1:10-CR-00006-TBR-2, 2012 WL 4023773, the court likewise determined that it lacked jurisdiction in a criminal case over SSA recoupment decisions. In *Young*, the court ordered the defendant to pay restitution to the SSA, in quarterly installments of not less than $25 dollars, after Young was convicted of fraudulently securing social security benefits, in violation of 42 U.S.C. § 1383a(a)(3). *Id.* at *1. After the SSA began to offset Young's entire monthly benefit, Young filed a motion to amend the restitution order. *Id.* The court concluded that it "lack[ed] jurisdiction to prevent the SSA from recouping Young's entire monthly [social security] benefit." *Id.* at *3. The court explained, *id.*:

> [T]he applicable statute and regulations authorize the SSA to recoup overpayments from Young by withholding her social security benefits. Young provides no authority to suggest that the SSA's recoupment power is limited to this Court's restitution order in Young's criminal case, and nothing in the Court's restitution order purported to limit other statutory or regulatory means of recouping losses caused by the defendant's wrongful acts.

*Skrine*, *supra*, 2015 WL 3932422, is a criminal case in which a defendant was required to pay restitution to the SSA after pleading guilty to one count of theft of government property, specifically, Social Security benefit payments, in violation of 18 U.S.C. § 641. *Id.* at *1. Under the terms of the restitution order in that case, monthly restitution was to be paid at a rate of at least $150.00, plus 25% of gross income in excess of $2,300.00. *Id.* After SSA began to withhold the entire amount of the defendant's monthly disability insurance benefits, the court

entered an amended judgment in which it ordered the SSA to "withdraw" only $300 from the defendant's monthly benefit payments. *Id.* at *1. Subsequently, "the Government moved for reconsideration of the Amended Judgment, arguing that the Court in this criminal action lacks jurisdiction to enjoin SSA from withholding, pursuant to its authority under the Social Security Act, the entire amount of Defendant's monthly [disability insurance benefits] payments." *Id.* at *2.

The court noted: "Other courts have recognized that a restitution order from a criminal case does not limit SSA's statutory or regulatory means of recouping losses caused by a defendant's wrongful acts, and Defendant admits that he has found no contrary authority." *Id.* at *3. The court determined, *id.*: "Defendant's conviction for theft of government property under 18 U.S.C. § 641 based on his fraudulently obtaining Social Security benefits authorizes SSA to withhold the entirety of Defendant's monthly [disability insurance benefit] payments until the overpayment amount is fully repaid, and the appropriate means for Defendant to challenge this withholding is through the administrative process." The court concluded, *id.*: "'[B]ecause Defendant is before this Court in a criminal case, not in a civil action to constrain collection efforts,' the Court lacks jurisdiction to enjoin SSA from exercising its authority, under the Social Security Act, to collect the overpayment amount and withhold Defendant's monthly [disability insurance benefit] payments." (quoting *Theede*, No. CR03-0996-01 PHX-DGC, 2010 WL 653422, at *1).

E.W. argues that these cases are not applicable because they did not involve 18 U.S.C. § 3664(i), which provides that individual victims receive "full restitution" before any amount is paid to the United States. ECF 314 at 13-14. However, E.W. has not identified any authority to support the proposition that this Court has jurisdiction to enjoin SSA from exercising its right to

recoupment. I am persuaded by the cases cited above that the existence of a restitution order in a criminal case does not foreclose SSA's independent statutory and regulatory recoupment authority.

I am mindful that SSA's decision to pursue congressionally mandated recoupment impacts defendants' abilities to satisfy their restitution obligations. But, in my view, there is no fatal conflict between the Social Security Act and its enabling regulations regarding recoupment, and criminal restitution statutes, such as the MVRA. This is because SSA recoups overpayments, not restitution. To be sure, in doing so, SSA adversely affects defendants' ability to pay restitution. But, the difference between recoupment and restitution is not merely one of semantics.

Here, as discussed, the relevant statutory and regulatory authority requires SSA to recoup overpayments from individuals who obtained benefits by fraud, regardless of the existence of a criminal case. *See* 42 U.S.C. § 404; 20 C.F.R. § 404.502(a). In contrast, the MVRA governs the Court's obligation to order a criminal defendant to pay restitution, to determine the schedule of those payments, and to order how those payments are to be distributed. *See, e.g.*, 18 U.S.C. §§ 3663A, 3664. The MVRA provides that "the court shall order . . . that the *defendant* make restitution to the victim of the offense...." 18 U.S.C. § 3663A(a)(1) (emphasis added). Further, the court shall "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid," 18 U.S.C. § 3664(f)(2). And, upon a change in the defendant's circumstances, the Court may "adjust the payment schedule[.]" *Id*. § 3664(k). The Court complied with its statutory obligation.

I agree with the government that "the criminal restitution statutes and the recoupment provisions of the Act apply to different interests—the former apply to property of the defendant,

whereas the latter apply to SSA's obligation to pay future cash benefits to one or more individuals." ECF 318 at 2. The two recovery schemes operate independent of one another. "[T]he Social Security Administration's administrative recovery of overpayments is separate and distinct from the collection of restitution[.]" *Wernick v. United States*, No. 16-CV-5313, 2016 WL 7212508, at *5 n. 4. (N.D. Ill. Dec. 13, 2016). SSA's withholding procedure does not require a restitution order and occurs independent of a criminal action. As discussed, the offset is triggered by an administrative "determination that an overpayment has been made." 20 C.F.R. § 404.502. And, SSA utilized an independent administrative process to determine the amount of the overpayment to the defendants and whether the overpayment was obtained by fraud. *See* POMS GN 04020.010.

In addition, the restitution statutes cited by E.W. do not confer authority on the Court to order SSA to refrain from withholding the defendants' social security benefits. As discussed, *supra*, the MVRA provides a court with authority to order a defendant to pay restitution. *See, e.g.*, 18 U.S.C. §§ 3663A, 3664. And, section 3664(i) of the MVRA requires a court to direct a defendant to make restitution first to non-federal victims. But, the MVRA does not confer authority on a court to regulate a third party, such as the SSA, by ordering it to disregard its own regulations and a congressional mandate to recoup benefits.

And, pursuant to 18 U.S.C. § 3613(a), if defendants were receiving Social Security benefits, the USAO would not be prohibited by section 207 of the Social Security Act from garnishing those benefits. However, the fact that the USAO could reach certain funds for garnishment does not confer authority on the Court to modify a restitution order.

### III. Conclusion

SSA is entitled to recoup overpayments to the Whartons by withholding their social security benefits. The Court's restitution orders do not foreclose SSA's statutory and regulatory right to exercise its right to recoupment.

For the foregoing reasons, I shall deny E.W.'s Motion (ECF 299). An Order follows.


Date: May 8, 2017                                         _____/s/_____
                                                          Ellen Lipton Hollander
                                                          United States District Judge